IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES W. CHANEY, JR.                                                          PLAINTIFF

V.                    CASE NO. 5:14-CV-5352

SHERIFF KELLEY CRADDUCK;
SERGEANT COGDILL;
LIEUTENANT J. MARTINEZ;
LIEUTENANT DEVORE;
DR. ROBERTO SAEZ, Southern Health Partners;
NURSE AMBER GOFF, Southern Health Partners;
JOHN DOE DEPUTY;
CATERING BY MARLINS d/b/a
CBM MANAGED SERVICES; and
NURSE TYRANNY RAY                               DEFENDANTS

## OPINION AND ORDER

Currently before the Court is a Motion for Reconsideration and Clarification (Doc. 91) filed by Plaintiff James W. Chaney, Jr. on April 21, 2017. The Motion asks the Court to reconsider its Order (Doc. 85) *sua sponte* vacating its previous August 17, 2016 Order (Doc. 62) adopting the Summary Judgment Report and Recommendation (Doc. 61) ("Summary Judgment R&R") filed by U.S. Magistrate Judge Mark E. Ford. Alternatively, Chaney's Motion asks the Court to clarify that its prior dismissal of certain of his claims was without prejudice, and to allow him leave to file an amended complaint reasserting those claims. The Court held a pre-trial conference in this matter on April 26, 2017, during which it took oral argument on the pending Motion. At the conclusion of oral argument, the Court announced its intent to grant the Motion, in the sense that it would reconsider its ruling, not in the sense that it would necessarily grant the relief requested in the Motion. The Court has now reconsidered its Order (Doc. 85), and finds for the reasons discussed

1

below that the most appropriate course of action is to allow Chaney leave to file an amended complaint.

## I. DISCUSSION

This suit began when Chaney filed his Original Complaint (Doc. 1) on November 14, 2014, and then filed an Amended Complaint (Doc. 9) on January 27, 2015. The Amended Complaint brings claims against several employees of Benton County, including jail guards at the Benton County Detention Center ("BCDC") and County Sheriff Kelley Cradduck, in their individual and official capacities (the "Benton County Defendants"). It also named a John Doe doctor—later identified as Roberto Saez—along with Nurses Amber Goff and Tyranny Ray, all of whom are employees of Southern Health Partners ("SHP"). SHP contracts with Benton County to provide medical services at BCDC. Chaney named these Defendants (the "Medical Defendants") in their official and individual capacities as well. Finally, the Amended Complaint names Catering by Marlins ("CBM"), a catering company that contracts with Benton County to provide food services at BCDC.

The claims listed in Chaney's Amended Complaint are wide ranging, spanning from allegedly unconstitutional conditions of confinement, to physical and verbal abuse, to constitutionally deficient medical care. On March 23, 2015, the Medical Defendants filed a Motion to Dismiss (Doc. 15), arguing that Chaney's *official-capacity* claims against them were subject to Rule 12(b)(6) dismissal. On September 1, 2015, U.S. Magistrate Judge Mark E. Ford entered a Report and Recommendation (Doc. 41) (the "Dismissal R&R") advising the Court that the Medical Defendants' Motion should be granted, and the official-capacity claims against them dismissed. Chaney did not object to the Dismissal

R&R, and the Court accordingly entered an Order (Doc. 43) adopting it on October 9, 2015. *See Thomas v. Arn*, 474 U.S. 140, 149-153 (1985) (suggesting several times that a district court judge need not review a magistrate's R&R when it is not objected to).[1]

The case progressed until January of 2016, when all three groups of Defendants—CBM, the Medical Defendants, and the Benton County Defendants—filed Motions for Summary Judgment (Docs. 50, 53, 56). On July 19, 2016, Magistrate Judge Ford issued the Summary Judgment R&R (Doc. 61). The Summary Judgment R&R advised that the Benton County Defendants' Motion should be granted, and the claims against them should be dismissed with prejudice; that CBM's Motion should be granted, and the claims against it should be dismissed with prejudice; and that the Medical Defendants' Motion should be denied.

In discussing the Medical Defendants' Motion, the Summary Judgment R&R first found that genuine issues of material fact prevented summary judgment on Chaney's individual-capacity claims against them. Issues of fact existed, Magistrate Judge Ford explained, as to whether the Medical Defendants acted with deliberate indifference to Chaney's serious medical needs when they refused to provide him with narcotic pain medication following his hernia surgery, despite the surgeon's prescription for such

---

[1] *Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("[Section 636(b)(1)(C)] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* ("Petitioner first argues that a failure to object waives only *de novo* review, and that the district judge must still review the magistrate's report under some lesser standard. However, § 636(b)(1)(C) simply does not provide for such review."); *id.* at 150 ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *id.* at 153 ("It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's [sic] reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

3

medication, and to treat Chaney's TMJ. *See* Doc. 61, pp. 23-26. Then, the Summary Judgment R&R went on to address Chaney's *official-capacity* claims against the Medical Defendants, despite having previously discharged these claims in the Dismissal R&R.

> I also believe there is a question of fact as to whether the policy is unconstitutional. Official-capacity liability under 42 U.S.C. § 1983 occurs when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. Plaintiff may prevail on his official capacity claims by identifying a policy that constitutes deliberate indifference. I believe there is a genuine issue of fact as to whether the across-the-board policy of not providing narcotic pain medication evidences deliberate indifference to the serious medical needs of the Plaintiff.

*Id.* at 26 (quotations and alteration omitted). Neither party objected to the Summary Judgment R&R, so the Court entered an Order (Doc. 62) adopting it on August 17, 2016.

On September 9, 2016, the Court entered a Case Management Order (Doc. 63) providing for a period of discovery and setting a trial date during the Court's May 1, 2017 term. On October 7, 2016, Magistrate Judge Ford entered an order appointing counsel to Chaney, who had been proceeding *pro se*. Thereafter, the parties proceeded with discovery, and on March 29, 2017, filed their required pre-trial disclosures. These filings prompted the Court to begin its trial preparation process, starting with a thorough review of the record. This, in turn, led the Court to discover the aforementioned inconsistency between the Dismissal R&R and the Summary Judgment R&R regarding Chaney's official-capacity claims against the Medical Defendants.

On April 12, 2017, the Court reconciled this inconsistency by *sua sponte* vacating its previous Order (Doc. 62) adopting the Summary Judgment R&R, and instead declining to adopt the portion of the Summary Judgment R&R discussing Chaney's official-capacity claims against the Medical Defendants. This *sua sponte* Order (Doc. 85) had the effect

4

of clarifying that only Chaney's individual-capacity claims, and not his official-capacity claims, would proceed to trial. However, believing that the parties had conducted discovery assuming that his official-capacity claims were still alive, and convinced that those claims were meritorious, Chaney filed the instant Motion for Reconsideration and Clarification (Doc. 91) on April 21, 2017.

The Court's review of this Motion led it to discover two more glitches with the Dismissal R&R and the Summary Judgment R&R. Some explanation of law is necessary to contextualize these problems. Just as "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010), when a government contracts with a third-party to fulfill a constitutional duty, official-capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1–*2 (W.D. Ark. Aug. 18, 2016) (finding that official-capacity claims against employees of SHP "are treated as claims against SHP" because "Benton County has contracted with SHP to provide healthcare to County prisoners"). To sustain an official-capacity claim against such an entity, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."). Thus, Chaney's official-capacity claims against the Medical Defendants are "functionally equivalent" to alleging that their employer, SHP, had "a policy, custom, or [took an] official action" that deprived him of

5

constitutionally adequate medical care. *Veatch*, 627 F.3d at 1257; *Johnson*, 452 F.3d at 973.

The Dismissal R&R, however, errantly stated that Chaney's official-capacity claims against the Medical Defendants "are treated as claims against *Benton County*," instead of SHP. (Doc. 41, p. 3 (emphasis added)). In one sense, this statement of law can generously be reconciled by noting that a governmental unit, such as Benton County, *may* also be held liable for its contractors' unconstitutional policies. *See Crooks v. Nix*, 872 F.2d 800, 803-04 (8th Cir. 1989) ("Even though defendants have contracted with CMS to furnish medical services this does not provide absolute immunity against a prisoner's claim where prison policies are alleged to contribute to the denial of proper medical and dental care."); *Prosser v. Nagaldinne*, 2011 WL 250999, at *9 (E.D. Mo. Jan. 26, 2011) ("The failure of medical contractors to provide adequate or proper pain medication can support a claim of deliberate indifference against prison supervisors.").[2] What is important for present purposes, though, is that the Dismissal R&R's reference to Benton County creates uncertainty about whether Magistrate Judge Ford determined that Chaney's claim failed by not plausibly alleging that SHP had an unconstitutional policy, or that Benton County had an unconstitutional policy. This uncertainty is further compounded by the Summary Judgment R&R. In discussing "the across-the-board policy of not providing narcotic pain medication," Magistrate Judge Ford does not specify whose policy he is referring to—SHP's or Benton County's. (Doc. 61, p. 26).

---

[2] The Court makes no determination at this time as to whether *Crooks* is analogous to the instant case, whether *Prosser* is analogous and persuasive, and ultimately whether Benton County may be held liable for SHP's allegedly unconstitutional actions. These questions are not now properly before the Court.

6

These uncertainties are highly relevant because Chaney's Amended Complaint, broadly construed, makes out an official-capacity claim against Sheriff Cradduck, a Benton County Defendant, for failing to provide constitutionally adequate medical care. *See* Doc. 9, p. 15 ("Sheriff Cradduck . . . is responsible for the medical staff ensuring that it provides adequate medical care to inmates . . . ."). But this official-capacity claim against Sheriff Cradduck was not specifically addressed by the Summary Judgment R&R, creating the possibility that he was dismissed from this lawsuit without having all of the claims against him (or, in effect, against Benton County) substantively adjudicated. Because Benton County *could* be liable for its own allegedly unconstitutional policy, or perhaps the allegedly unconstitutional policy of its contractor SHP, this oversight is potentially prejudicial to Chaney.

With this background and explanation in mind, the Court has three options to resolve the problems with the R&Rs. First, it can adopt the tack taken by its *sua sponte* Order (Doc. 85) and allow the case to proceed to trial only on Chaney's individual-capacity claims against the Medical Defendants. Second, it can allow the case to proceed to trial on Chaney's individual- and official-capacity claims against the Medical Defendants, either by vacating its Order (Doc. 43) adopting the Dismissal R&R, or by granting Chaney leave to file an amended complaint asserting those claims. Third, it can delay the trial and grant Chaney leave to file an amended complaint bringing his individual- and official-capacity claims against the Medical Defendants, and re-asserting his official-capacity medical claim against Sheriff Cradduck.

The Court believes the third option is the most prudent for two primary reasons. First, it is the only solution that effectively alleviates the taint of the R&Rs. One

7

manifestation of the R&Rs' problems was that Chaney and the Medical Defendants conducted discovery and prepared for trial with understandable confusion over whether the official-capacity claims were alive. Another is that Chaney was deprived of his opportunity to conduct discovery with Benton County, an opportunity that may also be meaningful to the Medical Defendants if the official-capacity claims against them are permitted to proceed. Allowing Chaney to assert the aforementioned claims against Sheriff Cradduck and the Medical Defendants, providing the parties an additional discovery period, and permitting a subsequent round of dispositive motion practice, negates these problems.

Second, the Court's other options would be unfairly prejudicial to Chaney. True enough, Chaney should have objected to both R&Rs, and his former *pro se* status did not absolve him of the responsibility to do so. But the Medical Defendants also should have objected to the Summary Judgment R&R, and their failure to do so evens the equities when weighed against Chaney's failure. The Court thus turns to the prejudicial effects of including or not including Chaney's official-capacity claims against the Medical Defendants at trial, and finds that it would unfairly prejudice Chaney to prohibit the claims. This is so, primarily, because were the Court reviewing the question *de novo*, it would agree with the Summary Judgment R&R and find that genuine issues of material fact exist as to the claims—a conclusion the Court did not have the record information necessary to reach at the time of its *sua sponte* Order.

Courts in the Eighth Circuit have previously held that a policy of not prescribing narcotic pain medication to inmates can constitute deliberate indifference to serious medical needs. *See McAdoo v. Martin*, 2017 WL 1091348, at *7 (Mar. 21, 2017) (Hickey,

J.) (finding that a policy of denying pain medication to inmates without exercising medical judgment constituted deliberate indifference, and collecting cases); *Tatum v. Helder*, 2017 WL 707499, at *8 (W.D. Ark. Feb. 1, 2017) (Wiedemann, M.J.), *R&R adopted without objection by the undersigned*, 2017 WL 706622 (W.D. Ark. Feb. 22, 2017) ("I believe there are genuine issues of material fact as to whether SHP had a policy, practice, or custom of not prescribing narcotic pain medication to inmates at the WCDC."); *Strahan v. Rottnek*, 2015 WL 249448, at *5 (E.D. Mo. Jan. 20, 2015) ("Because Dr. Rottnek's policy was applied to plaintiff without any medical determination regarding plaintiff's medical need for narcotic prescription medication for his chronic pain, the policy had the effect of denying plaintiff medical treatment."); *see also Grawcock v. Hodges*, 2012 WL 3245977, at *7-*9 (N.D. Ind. Aug. 6, 2012) (denying summary judgment because genuine issues of material fact existed as to whether either jail or medical provider had policy of restricting narcotic medications).

In the instant case, Chaney testified that Nurse Goff informed him that narcotics are not allowed in the BCDC. (Doc. 91-2, p. 114). In her deposition, Nurse Goff denied the existence of such a policy. (Doc. 91-3, p. 18). However, she also read from a post-op medical form completed by another SHP employee who indicated that Chaney was given Tylenol for pain "due to inmate status." *Id.* Nurse Ray stated that SHP doesn't "typically give narcotics at the jail," because "it's a low narcotic facility." (Doc. 91-4, p. 7). Taken together, these deposition excerpts create a genuine issue of material fact as to whether

9

Chaney was denied narcotic pain medication due to a policy of denying such medication, rather than an exercise of independent medical judgment.[3]

This brings the Court next to Chaney's official-capacity claim against Sheriff Cradduck, which was never substantively adjudicated by the Summary Judgment R&R. Not including this claim at trial would also be unfairly prejudicial against Chaney. As an initial matter, it is at least conceivable that Benton County could be liable for SHP's allegedly unconstitutional policy. *See supra* at 6. Beyond that, there is substantial uncertainty in this case about whether it was BCDC or SHP (or neither) that had an allegedly unconstitutional narcotics custom or policy. Take, for example, Nurse Ray's deposition testimony.

Q: Well, that phrase "low narcotic facility," where does that come from?
A: Because you don't want to say no narcotic because that's an absolute.
Q: Right. But in other words, is that something that would be determined by the medical staff?
A: Yes.
Q: Okay. So it's not like the sheriff's policy; is that what you're saying?
A: I'm not 100 percent on that. I don't know.
. . .
Q: Oh, so that was something specific to SHP?
A: I don't know.

(Doc. 91-4, p. 7). Given this uncertainty, proceeding to trial without Benton County would create substantial confusion for the jury and lead to material gaps in Chaney's evidence. It seems to the Court that the current evidence would consist of witnesses shrugging their shoulders as to whether BCDC had a policy or custom of denying inmates narcotic medication without exercising medical judgment. Furthermore, Benton County's absence

---

[3] Discovery conducted subsequent to this Order may change this finding, and the Court does not pre-judge the merits of any future motions for summary judgment filed by the Medical Defendants.

10

would be unfairly prejudicial to the Medical Defendants. If the jury were to find that BCDC did have an unconstitutional policy, the Medical Defendants may be held liable for damages which, in whole or in part, the jury would have otherwise attributed to Benton County.

The Court does recognize that bringing Benton County back into this case after it was dismissed in August of 2016 will cause it prejudice. But providing an additional discovery period and giving it the opportunity to move for summary judgment on the sole remaining claim against it will mitigate much, if not all, of the unfairness of the prejudice. Furthermore, to whatever extent unfair prejudice may remain, it is outweighed by the unfair prejudice that would fall on the other parties if Benton County were not made a party to this case.

For these reasons, the Court will clarify that its previous dismissal of Chaney's official-capacity claims against the Medical Defendants was without prejudice, and allow him leave to file an amended complaint consistent with the restrictions outlined below. By separate order, the Court will amend its *sua sponte* Order (Doc. 85) to add that it declines to adopt the Summary Judgment R&R insofar as it applies to the official-capacity medical claim against Sheriff Cradduck. Finally, the Court will find moot the pending Motions in Limine (Doc. 80, 81, 83) and the pending Motion for Writ of Habeas Corpus ad testificandum (Doc. 90).

## II. CONCLUSION

For the aforementioned reasons, Chaney's Motion for Reconsideration and Clarification (Doc. 91) is **GRANTED**. On reconsideration, the Court **CLARIFIES** that its previous dismissal of Chaney's official-capacity claims against the Medical Defendants

was without prejudice. It further affords Chaney leave to file a second amended complaint, consistent with the following:

1. Chaney's second amended complaint shall be limited to his individual- and official-capacity claims against the Medical Defendants, and his official-capacity medical claim against Sheriff Cradduck.

2. Should Chaney choose, he may substitute Benton County as the formally named party, rather than Sheriff Cradduck.[4]

3. Chaney shall file his second amended complaint within **7 DAYS** from the entry of this Order.

Because Sheriff Cradduck was previously dismissed from this case, Chaney shall comply with Fed. R. Civ. P. 4 in effecting service, or obtaining a waiver of service, from Sheriff Cradduck or Benton County. Chaney should effect service, or obtain a waiver, as promptly as possible. The Court encourages Sheriff Cradduck / Benton County to answer Chaney's second amended complaint as promptly as possible.

Once Sheriff Cradduck / Benton County answers Chaney's second amended complaint, the Court will enter a revised case management order scheduling a brief discovery period limited in scope to the official-capacity claims against the Medical Defendants and Sheriff Cradduck / Benton County. The revised case management order will also allow the parties an opportunity to move for summary judgment on the official-capacity claims.

Finally, the Clerk of Court is directed to mark Docs. 80, 81, 83, and 90 as **MOOT**.

---

[4] In allowing Chaney to make this change, the Court notes that Sheriff Cradduck is no longer the Sheriff of Benton County. As the official-capacity claim against Sheriff Cradduck is effectively a claim against Benton County itself, the Court believes that substituting the formally-named parties will make no substantive difference, but may provide for a cleaner record.

12

**IT IS SO ORDERED** on this 1st day of May, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE